are being submitted without argument on the briefs. They are Appeal No. 07-3079, Rivago v. Merit System Protection Board, and Appeal No. 07-5051, Watson v. United States. The argument list consists of one case, Appeal No. 06-3424, Rods v. Department of Interior. Mr. James, welcome back to our court. Good afternoon to you. Please proceed. Thank you. May it please the court. This case, in many ways, fairly frames the ongoing conflict between position description and actual duties performed in this particular area. No, wait, wait, wait. How can that be right? The administrative judge, after an extensive discussion of position description, language, and duties, went on to carefully assess the evidence of what he actually did. And it seems to me that the decision in the end rested on how much of his actual activity qualified under the statute and the regulation, and how much it didn't. So I don't think it's fair to characterize this as somehow involving the tension between what the position description says or what the title of the job is, versus the hour-by-hour, day-by-day, week-by-week activities of the particular employee. I made that comment, Your Honor, for the following reason. More often, you have a position description in this area that may be vague, may be less specific than it could be, but speaks generally to park ranger activities, the GS 025 series PD. In this case, we have night and day. That is to say, I think it's a 5303 series dashboard, versus the duties of a park ranger law enforcement officer. For that reason, I think that polar analysis points to the problem. And that is my only comment. But don't you have to get over the obstacle that there is a finding of fact, based on the testimony of your own witnesses, that a minority of the time of this employee was spent doing things that the reg. describes as earning these special early retirement points? Yes, but I think the fundamental question in that regard is the application of the exclusionary language of OPM's regulations, maintaining law under protecting life and property, and so on, to the facts of this case. Because without that exclusionary application, by the judge of this case, I suggest we would prevail. That language is very powerful. It's highly exclusionary. It seems to me that unless you're a prison guard or an FBI agent, if you're merely on patrol most of the time, that language kills you. The court's aware of my position on Farrier versus the Department of Interior, which was a board case. No question, right? But I think Farrier captures the problem with per se rules of one sort or another, like OPM has set out here. The heart of those rules, as the board correctly recognizes, is the heart of what every law enforcement officer does. It's what the Park Service, in its own Park Service manual, talks about as the policy of Park Service ranchers. But Mr. James, what the Park Service says in its manual is neither here nor there. There's a congressional statute, there's an OPM regulation, and when you read those, it seems to me clear that Congress did not intend to allow these special retirement credits to be earned by people who in ordinary conversation we might all call law enforcement officers, but instead intended to restrict these special credits toward early retirement to a fairly small subset of those law enforcement officers who are exposed almost constantly to high danger and high rigor because they're actually around criminals most of the time. Now, if that's anywhere near a fair characterization of the statute in the reg, I don't see how you can prevail in this case. Well, then no park ranger can prevail. Well, if they investigate and apprehend criminals, they might, right? Well, as did my client. That's right. Well, he did, but it was a very small portion of the total time. That's the problem. He may have been on patrol 70% of the time, as the witness for the second period testified, but he wasn't pursuing criminals or detaining criminals 70% of the time. I doubt it was 1% of the time. Well, the list of those cases attributed to him during the relevant time frame are in the appendix, of course, but to the point. Yeah, but somebody who locks himself out of a car at a national park while looking over the magnificent view is not a criminal. He's not a criminal being detained or investigated or interrogated by the officer who helps him get back in his car. No, I don't suggest that. Well, lots of those incidents on the log you're referring to were of that sort. Those are circumstances not of any law enforcement officer's own making, of course. But, for example, you'll notice on that same log, in several cases, there are references to warrants. There's no doubt that he did do some arresting, some interrogating, some Miranda warning, some custodial and detention work. No question. And the administrative judge explicitly acknowledged that. The problem is, quantitatively, it was a tiny splinter of the total activity when he was out there hour by hour, day by day. That's what's so adverse to your client in this particular case, on his own evidence. This isn't a question of the agency evidence says one thing and your evidence says the other. Here, your evidence is the only evidence, and on that very evidence, the administrative judge, as I read his decision, basically said, yeah, did some arresting, interrogating, et cetera, but very little, mostly did routine patrolling. Perfectly important, perfectly useful, perfectly proper, but not qualifying under this regulation. And you say, well, under this test, no park ranger would qualify. Well, of course, the test isn't for a park ranger, and it may be that a park ranger, if those are his duties, would qualify. So that doesn't decide the case. No, no, I understand it doesn't. Quite the contrary. It leads to a result like Watson for the police officers in the 083 series. And, of course, that's something that causes me to stay awake at night. But nonetheless, I think the application of this rule, without recognition of the role that the investigation, apprehension, and detention, which the judge recognizes my client performed, is an unreasonable result. It's the wrong result because the necessary analysis that the board discussed in Ferrier, among other things, didn't occur. It was a pro se rejection as opposed to, well, assessing. I don't see how you can say that this administrative judge, with the testimony of the two supervisors and the testimony of your client himself, didn't engage in a careful factual analysis. I've read the opinion four or five times now. It's extremely careful. It dissects the evidence of each of the witnesses in considerable detail and compares the one to the other. And then it makes findings that, to my eye, don't look unreasonable in the light of that testimony. So I just find it very hard to see any kind of flaw that's even approaching reversible error in the factual analysis as articulated in the opinion of this administrative judge. And my position is there's legal error in the analysis, the application of those exclusionary regulations to the facts of this case. By the way, you had indicated to the court personnel that you wanted to save seven minutes for rebuttal, and you've got about six and a half minutes left. I know that. Time is yours. I just wanted to make one additional comment at this juncture, if you don't mind. And that is this. You talk about not having performed enough law enforcement duties. We have the discussion in the decision about level one law enforcement commission versus level two law enforcement commission. But it's immaterial. It wouldn't matter what level commission he had. If, in fact, he was only investigating, chasing, detaining, questioning criminals 1% of the time, he can't make it. Then I'll reserve the balance of my time. Thank you. Thank you, Mr. James. Mr. Edmonds. Thank you, Your Honor. Before I launch into my argument, I just wanted to make one point of clarification for the court. We submitted last week a 28-J letter attaching a supplemental authority, a non-precedential decision of this court in a case, Chambers versus Department of the Interior. Is that the one that was issued in February? Yes. February 7th, to be precise? You just found that last week, even though it's been available on the website since February 7th? Yes, Your Honor. In fact, I checked. It had been available on the website since February 15th, and I apologize for not finding that sooner. But I did find it only last week in preparing for this argument. You wrote your brief in March. It's dated March 12th, but the stamp filed March 28th. In any event, sometime in March. So in this case, you've been out for a month at the time you sent in your brief. Correct, Your Honor. I do apologize to the court. I did not find that case and found it only in reviewing case law for more recent cases that have come out since then. Normally, if it's not in the brief, we won't entertain it. Unless there's some kind of extraordinary reason or excuse that would justify not including it in your brief, we probably shouldn't entertain it because in his grave brief, his reply brief, Mr. James' reply brief that was filed at the end of March, March 26th, he didn't have a chance to confront this case because you never brought it up. So there's a problem of unfairness here. Your Honor, there may be that problem, and I do apologize. Mr. Evans, let me ask you a question in this case. What more would this individual have needed to have done to qualify as a LEO? Well, this individual would have needed to do something in the direction of, for example, an FBI special agent. What this individual did was general patrol, and this court's cases teach, with or without chambers, this court's cases teach the generalized patrols and generalized patrol duties where you incidentally happen upon crime and then… Think with me on the distinction between a detective and a beat cop. Sure. The detective is going to be investigating, apprehending, reading Miranda warnings, doing all the things to ring the proper bells to get LEO status. The beat cop, although under considerable pressure at times, is probably just going to be patrolling. Does the beat cop lose under the standard you're suggesting? Your Honor, the beat cop does lose under that standard, and the standard that is clearly… What if he's in a position in a high-crime area where he's in constant danger, where he has threats, where he must maintain physical vigorousness just to do his job? Yeah. Does that make the beat cop… Well, there might be a distinction there, Your Honor, to be made. It may be that that person is in such an environment… I mean, one could conceive of a situation where a police officer were placed into such an environment that it was simply an area where a crime was committed in front of the police officer all the time. So what you're saying is this person gets disqualified because they're working in a very congenial national park atmosphere. If you put them into a high-crime area, you change? It would be a different case, Your Honor. Under the court's case law, there is this line that is drawn between generalized patrol duties and the special investigative-type law enforcement duties that certain federal… But I'm taking you to the general patrol that is in a less-than-general atmosphere. Right. Your Honor, and I think that that may be… It is possible that that could be a different kind of job. An ordinary patrol officer patrolling an environment that is not a high-crime place. I can think of an example just from the news. Perhaps a military police officer in Baghdad, in a place where things are going on all the time, is somebody who is out there and in that position simply because crime is going on, because we know it, and because that is why that person is there. Can a place change its character? What if there were a threat that there was going to be a terrorist bombing at a national park, and suddenly all park rangers were on high alert and were continually, around the clock, required to be at their post and so forth? Would that change things? That is answered by the regulations, and actually that would not change things, because duties of the temporary or emergency nature… What if it persists for years? If it persists for years, then that might be a different kind of job. If we know that there is a threat in Grand Canyon National Park, there is some sort of ongoing, continuous threat, and the National Park Service instructs its rangers to go out, to seek people, to investigate, and to find the people who are responsible for attempting to bring about this attack, then, Your Honor, that might be a different position, but that position would exist under board precedent, under this court's precedent, for a different reason altogether. That is not the position here. Why are you trying to defend the idea that there might be an unfair result here? Isn't your position simply that the reg says what it says and the departments have no choice but to apply it, and actually neither does the Merit System Protection Board or this court? Well, that is my position, Your Honor, and I'm not trying, I don't think, to defend an unfair result. I don't think it's an unfair result in this case. I'm trying to answer Judge Rader's question as to where the line is drawn, which I think is the issue that arises and the difficulty for this court in articulating decisions in these cases that stop litigation, such as the present case, from occurring when, in the present case, clearly under the court's precedents in Watson, in Luke, in Hall, in Bingaman, there is no doubt that the duties that Mr. Rodds were performing were the same as the duties that were found not to be sufficient under the statute in any of those cases. And so, at a certain point, where someone is doing more than that, or someone is in a different area, or someone's job function changes so that that person is confronted with... Are you aware of any case in which this court has reversed the board and found that somebody was entitled to the coverage? I'm not aware of any, Your Honor. Is that because it's fact-based and we defer on facts? This court does defer on facts, and it is a question of whether there's substantial evidence in the record. And how about at the board level? How many times, to your awareness, has the board ever found somebody was covered when the agency ruled they were not? I don't believe I'm aware of any, Your Honor. I'm not aware of any either. So, basically, this is pretty much of a hopeless line of approach on the part of people who are essentially patrol-type law enforcement people as opposed to detective-type law enforcement people, much as was suggested by the questions Judge Ray directed. Yeah, I think that that's correct, Your Honor. I mean, I think that this court and the board have tried to clearly articulate that repeatedly in its cases, that there is this distinction. Have they succeeded? Your Honor, this case is here, so I don't know. I understand, I think, fairly clearly what the court is getting at, but we do have a lot of these cases, not only this case, but other cases, and there are other courts... Who wrote the governing regulation? I'm sorry? Who wrote the governing regulation? What agency? The Office of Personal Injury. OPM. Pursuant to express statutory obligation. Do you understand, Mr. James, to be attacking the lawfulness of the regulation? No, I don't understand. I didn't see that in either of his briefs. I don't believe that he is... He says it misapplied, and that there's also legal as well as factual error in the application, but he doesn't say the reg itself is void as contrary to the statute. Correct, sir. I don't believe that he's saying that, and I don't believe that he could say that in light of the number of precedents this court has issued upholding the regulations and applying the regulations in the manner that we suggested in our brief. To summarize, Your Honor... You don't need to repeat. You probably don't need to summarize either. Fairly short argument. We haven't forgotten what you said at the beginning of your argument. Okay, well, Your Honor, again, Mr. Rod's duty is similar to those in all of this court's cases, and with that, based on the arguments in our papers and based on the argument I presented here, we're going to ask this court to affirm the judgment of the MSPB. Thank you. Mr. Gene. You have a little over five and a half minutes if you need it all. Thank you, Your Honor. I don't think I'll need them. I'm satisfied the court appreciates the issues, and there's nothing much that I can add to it. I'll make that, and so with that, I'll wait for the remainder of my time. All right, we thank you both. We'll take the appeal under advisement. All rise. The Honorable Court has adjourned until tomorrow morning at 10 a.m. Yes, I think yes.